FILED

July 6, 2017

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 11:04 AM



TENNESSEE BUREAU OF WORKERS' COMPENSATION
IN THE COURT OF WORKERS' COMPENSATION CLAIMS
AT MURFREESBORO

| | | |
|---|---|---|
| JACK GLASGOW, | ) | Docket No. 2017-05-0225 |
| Employee, | ) | |
| v. | ) | State File No. 3128-2017 |
| 31W INSULATION CO. INC., | ) | |
| Employer, | ) | Judge Dale Tipps |
| And | ) | |
| LIBERTY MUTUAL INS., | ) | |
| Insurance Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER GRANTING BENEFITS

This matter came before the undersigned workers' compensation judge on June 27, 2017, for an Expedited Hearing. The present focus of this case is whether Mr. Glasgow is entitled to medical benefits and temporary disability benefits for his workplace injuries. The central legal issue is whether 31W is likely to establish at a hearing on the merits that Mr. Glasgow's willful misconduct or willful failure to use a safety device bars his claim. For the reasons set forth below, the Court holds 31W is unlikely to meet this burden and Mr. Glasgow is entitled to medical and temporary disability benefits.

### History of Claim

On January 11, 2017, Mr. Glasgow fell from a height of several feet while installing insulation at a construction site for 31W. Mr. Glasgow suffered a head injury and remembered nothing about the incident. However, a coworker, Brian Helton, testified via deposition that he saw Mr. Glasgow standing on a board in the unfinished wall between the first and second floor just before the accident occurred. 31W provided medical treatment and temporary disability benefits for about three weeks before denying his claim. The company based the denial on its conclusion that the manner in which Mr. Glasgow installed the insulation violated a known safety rule or constituted willful misconduct that would bar him from recovering workers' compensation benefits. To

1

determine this issue, the parties presented evidence concerning Mr. Glasgow's work history with 31W, 31W's safety training, and evidence concerning the January 11, 2017 accident.

Concerning his history with 31W, Mr. Glasgow testified he first worked as an insulation installer for the company in 2014. During that period of employment, he suffered a work injury in a fall caused by the collapse of some homemade scaffolding he constructed. Kerry Johnson, the General Manager of Operations at 31W and Mr. Glasgow's supervisor, testified that the injury occurred while he was installing batt insulation in the top half of a two-story foyer in a house under construction. The proper procedure would have been to use a stick to place the insulation between the wall studs, then go back and use a ladder to "dress it up." Instead, Mr. Glasgow nailed a scrap board across the span of the foyer. This would have allowed him to walk across the board instead of having to use a ladder. When he stepped on the board, the nails pulled loose, and Mr. Glasgow fell. Mr. Johnson testified that he had several discussions with Mr. Glasgow following the accident about what he did wrong and how the job should be performed.

Mr. Glasgow stopped working for 31W sometime after the scaffolding accident. He later reapplied for a job with 31W, which rehired him in October 2016. Mr. Johnson testified that he rehired Mr. Glasgow out of friendship because he liked him and "knew he was down on his luck." He expressed concern about Mr. Glasgow's history of carelessness and discussed with Mr. Glasgow the importance of following proper procedure and safety protocols. Mr. Glasgow promised he would not take any unnecessary chances.

Mr. Glasgow admitted he signed Safety Handbook acknowledgement forms both times he applied at 31W but denied ever actually receiving or reviewing the handbook. Instead, he claimed 31W personnel just told him to sign the forms. He also denied his supervisors ever instructed him to use a ladder for heights or required him to use a hardhat in residential jobs. Rather, Mr. Johnson told him many times, "I don't care how it's gotta be done, just get it done and get the contractor off my back."

After the January 11 accident, Mr. Johnson conducted an investigation of the scene and spoke to Mr. Glasgow's coworker at the job site. He concluded that when Mr. Glasgow fell, he was standing on the top plate of the first-floor wall framing, holding onto a wall stud with one hand and using his other hand to place insulation batts above him between the second-floor studs. Mr. Johnson said this was unsafe and was "absolutely not" the way his workers were supposed to install insulation. He stated Mr. Glasgow's actions violated 31W's safety protocol – first by putting himself in harm's way and also by failing to use a ladder or wear a helmet, both of which 31W provided. Mr. Glasgow later apologized to Mr. Johnson for the accident and admitted he knew he should not have been on the wall.

2

Mr. Johnson described 31W's safety program. He said it held monthly (or sometimes more frequent) safety meetings attended by every employee, covering topics such as fall protection and ladder safety. He and other supervisors also made spot inspections to make sure employees were complying with safety rules. When asked about the Safety Handbook, Mr. Johnson said copies were located at the front counter of the shop. Normally, when an applicant gets to the acknowledgement forms in the application process, they ask to review the handbook. While the handbook describes various levels of discipline for safety violations, supervisors have discretion about whether to take disciplinary action, as well as what kind of action. Mr. Johnson has disciplined workers for safety violations in the past – four times in four years – but 31W has never disciplined Mr. Glasgow.

Larry Moore, 31W's Assistant Manager, confirmed Mr. Glasgow's attendance at the company's safety meetings. He provided a slightly different description about the application process, testifying that applicants received the Safety Handbook along with their application. Concerning the accident itself, Mr. Moore also stated that Mr. Glasgow's actions were very unsafe and he has never seen anyone else attempt to install insulation in that manner.

Mr. Helton also agreed that the proper method for installing insulation in that situation would have been to use a ladder. However, he admitted that he had performed similar maneuvers in the past. He also confirmed that a supervisor would come to the jobsite about once a week.

## Findings of Fact and Conclusions of Law

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Mr. Glasgow need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. Instead, he must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2016); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Compensability*

The Court first notes that 31W presented no testimony or other proof to contradict Mr. Glasgow's claim that he suffered a fall at work on January 11, 2017. Thus, there is no dispute that Mr. Glasgow established a specific incident, identifiable by time and place of occurrence. Further, it appears to be undisputed that his work was the primary cause of that incident. The Court therefore holds that Mr. Glasgow is likely to meet his burden of proving he suffered a compensable injury at a hearing on the merits. *See* Tenn.

Code Ann. § 50-6-102(14) (2016).

Despite sufficient proof of a compensable injury, 31W contended that two statutory provisions bar Mr. Glasgow's claim. Tennessee Code Annotated section 50-6-110(a)(1) provides that no compensation shall be allowed for an injury due to an employee's willful misconduct. Section 50-6-110(a)(4) bars claims due to an employee's "willful failure or refusal to use a safety device." After careful consideration, the Court holds 31W is unlikely to meet its burden of establishing all the elements of these defenses at a hearing on the merits.

The controlling case for this defense is *Mitchell v. Fayetteville Public Utilities,* 368 S.W.3d 442 (Tenn. 2012), which the Appeals Board cited as applicable to cases under the Reform Act of 2013 in *Gonzales v. ABC Professional Tree Services,* 2014 TN Wrk. Comp. App. Bd. LEXIS 2 (Nov. 10, 2014). The Supreme Court in *Mitchell* held that, in order to successfully defend a workers' compensation claim on the basis of willful misconduct, willful disobedience of safety rules, or willful failure to use a safety device, the employer must prove: (1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and, (4) the employee's lack of a valid excuse for violating the rule. *Mitchell,* 368 S.W.3d at 453.[1]

Regarding his actual notice of the safety rule, Mr. Glasgow suggested that the Safety Handbook did not identify ladders as safety equipment and contained no specific instructions or requirements as to when workers were required to use a ladder. A review of the Safety Handbook indicates Mr. Glasgow is correct. However, the Court agrees with 31W – an employer cannot anticipate every possible situation or unsafe decision by a worker, and it would be unreasonable to impose a duty to do so on the employer. This is especially true in a case such as this one, where an employee does something so patently unsafe as to violate the general admonishment of the Safety Handbook to "undertake all possible efforts to prevent exposing themselves or others to hazards."

Regarding Mr. Glasgow's claims that he never reviewed the Safety Handbook, the Court finds that testimony to be unpersuasive.[2] Further, Mr. Johnson testified credibly that he met with Mr. Glasgow and gave him specific and personal counseling about the necessity of using a ladder following his first accident, as well as when he was rehired.

---

[1] 31W argued that willful misconduct and willful failure to use a safety device are two distinct defenses; therefore, the factors set out in *Mitchell* only apply to failure to use a safety device. 31W contended that the old legal standard for willful misconduct still applies – that is, "an intention to do the act, purposeful violation of orders, and an element of perverseness." This argument is unpersuasive in light of the *Mitchell* court's statement: "Because Larson's four-step test establishes straightforward guidelines for evaluating claims of *willful misconduct* and the willful failure or refusal to use a safety appliance, we choose to adopt the standard for this and future cases involving *these statutory defenses*." *Id.* (Emphasis added.)

[2] Mr. Glasgow was evasive and argumentative through most of his examination. As a result, the Court found that much of his testimony was not credible.

Consequently, the Court finds that Mr. Glasgow had actual notice of a rule prohibiting the kind of unsafe behavior that caused his injuries and thus satisfies the first criteria of *Mitchell*.

Mr. Glasgow could not recall the accident and refused to admit that the actions described by Mr. Helton were dangerous. However, the Court finds that he must have understood the danger involved in violating the rule. This is especially true in light of the fact that his prior injury occurred in a very similar manner – because of his failure to use a ladder to install insulation at a height. Due to Mr. Glasgow's lack of memory, he was unable to offer any excuse for his failure to abide by 31W's safety rules. Consequently, this case meets both the second and the fourth criteria of *Mitchell*.

Regarding the third factor, bona fide enforcement of the rule, *Mitchell* does not appear to require perfection. The mere fact that employees sometimes ignore or break rules does not mandate a finding that an employer failed to enforce those rules. Instead, the inquiry appears to be, at least in part, whether employees are aware of the prohibition and that violation could result in discipline. *See Carten ex rel. Carten v. MBI,* 2013 Tenn. LEXIS 890 (Tenn. Workers' Comp. Panel Nov. 14, 2013). Applying this somewhat more flexible standard, it appears 31W made genuine efforts to instill safe practices in its employees and made random visits to the jobsites to confirm compliance. Further, Mr. Johnson testified he had disciplined four workers over the past four years. However, 31W's willful misconduct defense appears likely to fail under the specific facts of this case.

During his first period of employment, Mr. Glasgow suffered a workplace injury, the cause of which was his violation of the safety rules in a manner very similar to this case. In spite of this serious breach of company policy, Mr. Johnson testified that 31W never disciplined Mr. Glasgow and, in fact, later rehired him. This raises the question of whether 31W's actions could constitute assent to this type of behavior. An employee in Mr. Glasgow's situation might reasonably assume his employer was not serious about its safety rules and that there would be no consequences for ignoring them. At the very least, 31W's failure to enforce its rule on the occasion of Mr. Glasgow's first work injury caused by a patently unsafe act precludes a finding of a consistent, bona fide enforcement of the rule in question. Thus, 31W fails to meet the third criterion of *Mitchell*. The Court cannot hold that 31W would likely to prevail on its misconduct defenses at a hearing on the merits.

*Medical Benefits*

Having found Mr. Glasgow is likely to prevail at a hearing on the merits, the Court must address his request for medical benefits. Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn.

5

Code Ann. § 50-6-204(a)(1)(A). Employers are also required to offer a panel of physicians "from which the injured employee shall select one (1) to be the treating physician." *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(i). Therefore, 31W must provide reasonable and necessary medical treatment to Mr. Glasgow and must provide him with a panel of physicians from which he may choose his treating physician.

*Temporary Disability Benefits*

Mr. Glasgow also seeks payment of temporary disability benefits. An injured worker is eligible for temporary total disability (TTD) benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). The only record of a medical professional taking Mr. Glasgow off work came from Nurse Practitioner, Rachel Wise, at Vanderbilt Medical Center. Her January 20, 2017 return-to-work note stated, "Patient will be out of work from 01/11/2017 until 2/03/2017." Although Mr. Glasgow may eventually be able to establish other periods of disability, at this time the Court can only find he appears likely to prove he is entitled to TTD benefits for the period of January 11, 2017, through February 3, 2017, at the stipulated compensation rate of $450.15.

**IT IS, THEREFORE, ORDERED** as follows:

1. 31W shall provide Mr. Glasgow with a panel of physicians and medical treatment made reasonably necessary by his January 11, 2017 injury in accordance with Tennessee Code Annotated section 50-6-204.

2. 31W shall pay Mr. Glasgow temporary total disability benefits in the amount of $1,543.37 for the period of January 11, 2017, through February 3, 2017.

3. This matter is set for a Scheduling Hearing on August 29, 2017, at 9:00 a.m. You must call 615-741-2112 or toll free at 855-874-0473 to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED this the 6th day of July, 2017.**

_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Transcript of deposition of Brian Helton
2. Safety Handbook
3. Stipulated medical records
4. Affidavit of Jack Glasgow
5. Wage Statement
6. 2014 Safety Handbook Acknowledgement
7. 2016 Safety Handbook Acknowledgement
8. Photograph of accident scene
9. Collective photographs of accident scene
10. Photograph of proper installation technique

Technical record:[3]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Benefits was sent to the following recipients by the following methods of service on this the 6th day of July, 2017.

| Name | Certified Mail | Via Email | Email Address |
|------|----------------|-----------|---------------|
| Andrea Meloff | | x | ameloff@ddzlaw.com |
| Owen Lipscomb | | x | Owen.lipscomb@libertymutual.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**